IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

SIMMONS PERRINE MOYER
BERGMAN PLC;
GORDON JOHNSON, JR. d/b/a
THE JOHNSON LAW FIRM,

    Plaintiffs,

vs.

CHARLES JOSEPH COLEMAN, JR.;
SHARON A. COLEMAN;
UNITED STATES OF AMERICA;
IOWA DEPARTMENT OF
REVENUE;
STATE FARM MUTUAL
INSURANCE COMPANY,

    Defendants.

No. C11-0131

REPORT AND
RECOMMENDATION

TABLE OF CONTENTS

I.   INTRODUCTION ................................. 2

II.  PROCEDURAL HISTORY ......................... 2

III. RELEVANT FACTS .............................. 3

IV.  DISCUSSION ................................... 5
    A.   Claim of United States of America ............... 6
    B.   Claim of State Farm Mutual Insurance Company ..... 8
    C.   Claim of Sharon A. Coleman .................... 13
        1.   Innocent Spouse ......................... 14
        2.   Joint and Several Property Interest .......... 16
    D.   Claim of Iowa Department of Revenue ............ 17

V.   SUMMARY ................................... 17

VI.  REPORT AND RECOMMENDATION ................. 19

## I. INTRODUCTION

On the 13th day of March 2013, this matter came on for hearing on the Motion for Partial Summary Judgment (docket number 35) filed by Defendant Sharon A. Coleman, the Motion for Summary Judgment (docket number 36) filed by Defendant State Farm Mutual Insurance Company, and the Motion for Summary Judgment (docket number 37) filed by Defendant United States of America. All three motions for summary judgment were filed on January 18, 2013. On March 6, the motions were referred to me for a report and recommendation.

Plaintiffs Simmons Perrine Moyer Bergman PLC ("SPMB") and Gordon Johnson, Jr. were represented by their attorney, Jeffrey A. Stone. Defendants Charles Joseph Coleman, Jr. and Sharon A. Coleman were represented by their attorney, Tyler C. Patrick. Defendant United States of America was represented by its attorney, Gregory S. Seador. Defendant Iowa Department of Revenue was represented by its attorney, Dale T. Baker. Defendant State Farm Mutual Insurance Company was represented by its attorney, Steven C. Leidinger.

## II. PROCEDURAL HISTORY

SPMB filed this action on December 6, 2011, seeking an order establishing the parties' respective rights to proceeds obtained in an earlier personal injury action brought by the Colemans. In Count I, SPMB asked that it be permitted to deposit certain funds with the Clerk of Court, and the Court then direct how the funds would be distributed. On February 14, 2012, the Court ordered SPMB to transfer various amounts held in trust to the Clerk of Court for the Northern District of Iowa. On February 21, the Clerk of Court receipted for funds totaling $1,243,377.87. SPMB asks that the Court declare this interpleader action to be "proper," that it direct how the money now held by the Clerk of

2

Court should be distributed, and that it discharge SPMB from any further liability regarding those funds.[1]

In Count II of its complaint, SPMB refers to additional monies still held in its trust account. The balance on October 11, 2011, was approximately $245,010.19. SPMB and Johnson claim that they are entitled to the full amount as additional attorney fees, and that the Colemans "have no rightful claim to the money." SPMB asks that the Court enter an order declaring its legal right to receive the amount held in its trust account. The United States, Iowa Department of Revenue, and State Farm are not named as defendants in Count II, and the instant motions for summary judgment do not address Count II.

On April 17, 2012, the Court adopted a proposed Scheduling Order and Discovery Plan submitted by the parties. In reliance on those deadlines, a bench trial has been scheduled before Chief Judge Linda R. Reade beginning on May 20, 2013. A final pretrial conference is scheduled on April 17.

### III. RELEVANT FACTS

On November 22, 2005, Defendant Charles Joseph ("Joe") Coleman, Jr. was seriously injured in a motor vehicle accident. Coleman and his wife, Sharon A. Coleman, retained Gordon S. Johnson, Jr. (an attorney in Sheboygan, Wisconsin) and James E. Shipman (an attorney with SPMB) to represent them in connection with anticipated litigation. The Colemans then filed an action in the Iowa District Court for Polk County, seeking damages for Joe's personal injuries and Sharon's consortium claim.[2]

---

[1] In its Order of February 14, 2012, the Court retained jurisdiction, but reserved ruling "on whether SPMB has properly invoked interpleader, including whether the court has jurisdiction over the suit, whether SPMB is actually threatened with double or multiple liability, and whether any equitable concerns prevent the use of interpleader." Order (docket number 19) at 6, ¶ 6.

[2] Because the Colemans share the same last name, the Court will refer to them as
(continued...)

Prior to the trial, the Colemans reached a settlement with the defendants in the personal injury action. According to a "recap of settlement proceeds" attached to State Farm's motion for summary judgment, the settlement proceeds totaled $1,900,000.[3] Of that amount, $633,333.33 (one-third of the gross amount) was designated on the recap as attorney's fees. Another $73,161.93 was designated as "out of pocket expenses." Thus, the "net proceeds" of the settlement totaled $1,193,505.74. It is that amount, plus interest, which has been deposited with the Clerk of Court.

At the time of his accident, Coleman had car insurance with State Farm, which obligated State Farm to pay certain medical expenses incurred for bodily injuries sustained in the accident. Pursuant to its obligation, State Farm paid medical bills totaling $69,095.69. The insurance policy further provided that State Farm was subrogated to the extent Coleman was entitled to recover against any party liable for his injuries. Accordingly, State Farm claims that it is entitled to $69,095.69 from the settlement proceeds.

The United States also claims entitlement to the settlement proceeds. The Colemans filed joint federal tax returns for the tax years 1997 through 2005. Joe admits, however, that he failed to pay all of the federal income tax due for those years. Sharon asserts that she was "an innocent spouse, and as such, had no legal obligation to pay the federal income tax liabilities" for those years.[4] The unpaid federal income tax during those years, including accrued penalties and interest, totaled $1,468,498.22 as of January 7, 2013.

---

[2](...continued)
Joe and Sharon.

[3] State Farm's App. 62.

[4] Sharon Coleman's Response to the United States of America's Statement of Material Facts (docket number 41-1) at 2.

4

In addition to unpaid individual income taxes, it is undisputed that Joe failed to pay Federal Insurance Contributions Act ("FICA") taxes, totaling $69,096.99 as of January 7, 2013, including accrued penalties and interest. Joe also admits that he failed to pay Federal Unemployment Tax Act ("FUTA") taxes, totaling $945.27 as of January 7, 2013, including accrued penalties and interest. That is, Joe owes unpaid federal taxes totaling $1,538,540.48. Sharon argues, however, that, as an "innocent spouse," she has no liability in that regard. Sharon also argues that the portion of the settlement proceeds which are attributable to her consortium claim are not subject to any tax liens.

Unpaid income taxes are also owed to the State of Iowa. In its resistance to Sharon's motion for partial summary judgment, the Iowa Department of Revenue places the unpaid taxes at $453,313.57 as of February 11, 2013, including penalties, interest, and "statutory additions." In its brief, the Department of Revenue advises the Court that it "does not contest the priority of the claims of the United States, or of State Farm Mutual Insurance Company, over the claims of the State of Iowa here."[5]

## IV. DISCUSSION

SPMB's complaint is in two counts. Count I asks that the Court establish the appropriate disposition of approximately $1,243,377.87 on deposit with the Clerk of Court. Defendants Sharon Coleman, United States, Iowa Department of Revenue, and State Farm all claim an interest in that money. At the time of hearing, the parties agreed that this interpleader action was properly invoked to determine the appropriate distribution of the funds now being held by the Clerk of Court. The parties further agreed that SPMB should be discharged from any further liability for those funds, and Defendants are prohibited from bringing any other actions regarding the disposition of the interpleaded funds.

---

[5] Iowa Department of Revenue's Resistance to Defendant Sharon Coleman's Motion for Partial Summary Judgment (docket number 45) at 2.

5

In Count II, SPMB asks that the Court declare its legal right to approximately $245,010.19 held in its trust account.[6] SPMB, Johnson, and the Colemans claim an interest in those funds. Count II is not a subject of the instant motions for summary judgment.

### A. *Claim of United States of America*

The Court will first address the claim made by the United States. The Colemans admit that while they filed federal tax returns for the years 1997 through 2005, they did not pay the full amount of the income taxes due. Sharon asserts that, as an "innocent spouse," she had no legal obligation to pay the federal income taxes for those years.[7] The Colemans also admit that the United States timely made assessments against them for the unpaid taxes during those years.[8] Joe admits that he received notice of the assessments, although Sharon denies notice of the assessments and/or demands for payment.[9] In their response to the United States' motion for summary judgment, the Colemans do not dispute the amount of the unpaid taxes.[10] The unpaid taxes owed to the United States totaled $1,538,540.48 as of January 7, 2013.

---

[6] As noted above, $633,333.33 (one-third of the gross settlement proceeds) was designated as attorney's fees. At some point, SPMB, Johnson, and the Colemans agreed that $400,000 would be paid to the attorneys, with the remaining $233,333.33 placed in SPMB's trust account. It is that amount, plus accrued interest, which is the subject of Count II.

[7] Colemans' Response to United States of America's Statement of Material Facts (docket number 41-1) at 2, ¶ 3.

[8] *Id.*, ¶ 4.

[9] *Id.* at 3, ¶ 6.

[10] *Id.* at 2-5, ¶¶ 5, 11, and 14.

6

At the time of hearing, the Colemans' attorney asked that if the Court awarded summary judgment to the United States, that it schedule a second telephonic hearing to "confirm the amounts" of the liens. I believe, however, that the amount owed is established by the attachments to the United States' motion for summary judgment, and the Colemans' responses to the United States' statement of material facts. Attached to the United States' motion is a declaration of Philip J. Ubben, a revenue officer with the Internal Revenue Service, stating under oath the amounts due and owing. Attached to Ubben's declaration are the documents establishing the amounts owed and the assessments. In their resistance to the motion, the Colemans did not submit any affidavits, documents, or argument that the Government had miscalculated the amounts owed or the validity of the assessments. Indeed, when responding to the United States' statement of material facts, the Colemans admitted those matters. Instead, the Colemans waited until the instant hearing to assert, without any citation to the record, that they are entitled to an additional hearing to "confirm the amounts" owed.

In order to establish the existence of a genuine issue as to material fact, the non-moving party "'may not merely point to unsupported self-serving allegations.'" *Anda v. Wickes Furniture Co.*, 517 F.3d 526, 531 (8th Cir. 2008) (quoting *Bass v. SBC Communications, Inc.*, 418 F.3d 870, 872 (8th Cir. 2005)). Instead, the non-moving party "'must substantiate [its] allegations with sufficient probative evidence that would permit a finding in [its] favor.'" *Anda*, 517 F.3d at 531 (quoting *Bass*, 418 F.3d at 873). "'Evidence, not contentions, avoids summary judgment.'" *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 578 (8th Cir. 2006) (quoting *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 809 (8th Cir. 2003)). I believe that under this record there is no genuine issue as to the amount owed to the United States for unpaid taxes.

7

Federal law permits the establishment of a lien in favor of the United States upon all property or rights to property held by persons owing unpaid taxes. 26 U.S.C. § 6321. The lien is perfected by filing a notice of assessment. 26 U.S.C. § 6322. Here, it is undisputed that the federal taxes owed for years 1997 through 2005 total $1,538,540.48. It is also undisputed that the United States' lien was properly perfected here. *See* Notice of Levy (docket number 37-3 at 13-30). Therefore, it is clear that the United States has a valid lien against the settlement proceeds now being held by the Clerk of Court. The United States' lien exceeds the amount being held by the Clerk of Court. Accordingly, the United States is entitled to payment of the amount being held, subject only to possible claims by the other defendants.

The Iowa Department of Revenue does not resist the United States' motion for summary judgment. State Farm resists the motion to the extent it would prevent State Farm from receiving its subrogation interest of $69,095.69. Sharon Coleman resists the motion to the extent it would impose any liability on her for unpaid federal taxes, or would reduce her share of the settlement proceeds based on her consortium claim. The claims of State Farm, Sharon Coleman, and the Iowa Department of Revenue will be discussed below.

### *B. Claim of State Farm Mutual Insurance Company*

The Court will next address the claim made by State Farm. It is undisputed that following the accident, State Farm paid medical expenses on Coleman's behalf, totaling $69,095.69. It is also undisputed that pursuant to the policy, State Farm is subrogated to the extent Coleman was entitled to recover against any party liable for his injuries. The policy also provides that proceeds from a settlement are held "in trust" and must be reimbursed.[11] Title 26 U.S.C. § 6321 establishes a lien in favor of the United States on

---

[11] Condition 3(b) of the Policy states:

(continued...)

8

all property "belonging" to the delinquent taxpayer. State Farm argues that the portion of the settlement proceeds representing its subrogation interest never "belonged" to the Colemans because it was being held "in trust" and, therefore, the federal tax liens never attached to that amount.

State Farm repeatedly advised Coleman and his attorneys of its right to subrogation, beginning with a letter dated November 23, 2005 (the day after the accident).[12] The Colemans were also warned that they "should not sign any releases nor accept any payment from any other party without calling us first."[13] The Colemans settled the underlying personal injury action, however, without notifying State Farm. The defendants in the personal injury action issued checks to the Colemans and their attorneys.[14]

---

[11](...continued)
  Under medical payments coverage:

  (1) We are subrogated to the extent of our payment to the right of recovery the injured *person* has against any party liable for the *bodily injury*.

  . . .

  (3) If the *person* to or for whom we make payment recovers from any party liable for the *bodily injury*, that *person* shall hold in trust for us the proceeds of the recovery, and reimburse us to the extent of our payment.

State Farm's App. 38.

[12] State Farm's App. 42.

[13] State Farm's App. 47.

[14] State Farm's App. 63.

The Release signed by the Colemans for one of the underlying tortfeasors stated that the Colemans "will negotiate and pay from the proceeds of this settlement" any medical bills or subrogation interests.[15] In the Release signed with the other underlying tortfeasor, the Colemans agreed to satisfy subrogation claims from any "net proceeds" after satisfying the federal tax lien.

> We agree to satisfy all known and unknown liens and subrogation claims out of the above amount to the extent there remain net proceeds of settlement payable to us after payment of our attorney fees and litigation expenses and we have paid such sum to the United States Internal Revenue Service ("IRS") as is necessary to obtain a complete release and satisfaction of all IRS liens filed in Polk County District Court Case No. CL 106033 entitled Charles Joseph Coleman, Jr. and Sharon A. Coleman v. Plumb Supply Company, LLC and William Faber and/or are currently levied against Charles Joseph Coleman and/or Sharon A. Coleman.

Release. State Farm's App. 67-68.

A federal tax lien attaches to all property and rights to property "belonging" to a delinquent taxpayer following the filing of an assessment of the amount due. 26 U.S.C. §§ 6321, 6322. Here, it is undisputed that the United States assessed the Colemans for the delinquent taxes and perfected tax liens on the Colemans' property before the settlement proceeds were received. Preexisting tax liens attach immediately to newly acquired property. *Iowa Fair Plan v. U.S. Internal Revenue Dept.*, 257 N.W.2d 626, 629 (Iowa 1977). That is, a taxpayer's property may be "born" with a tax lien on it. *Id.*

The United States asserts — and I agree — that when the Colemans signed the settlement agreements on December 10, 2008, the Colemans had a clearly defined state-law right to the settlement proceeds. Accordingly, the United States' preexisting lien attached to the settlement proceeds at that time. The United States acknowledges that State

---

[15] State Farm's App. 64.

Farm also has a valid claim on the settlement proceeds. Because it had a preexisting lien, however, the United States argues that its claim must be satisfied before State Farm is entitled to recover any amount. That is, absent conflicting statutory authority, lien priority is established by the familiar rule of "first in time, first in right." *United States v. City of New Britain, Conn.*, 347 U.S. 81, 85 (1954).

State Farm argues, however, that its claim is mischaracterized as a "lien" on the Colemans' property. That is, State Farm asserts that the dispute is *not* one of priority between competing liens. Rather, State Farm argues that the portion of the settlement proceeds representing medical bills was held by the Colemans "in trust" for State Farm's benefit and, therefore, was not the Colemans' "property." That is, as mere trustees, the property did not "belong" to the Colemans. Therefore, according to the argument, the United States' tax lien never attached to that portion of the settlement.

To resolve this issue, the Court must determine whether the Colemans had a "property interest" in that portion of the settlement proceeds representing medical bills paid by State Farm. If *all* of the settlement proceeds "belonged" to the Colemans, subject only to State Farm's claim for reimbursement, then the United States' tax lien attached and has priority over any claim by State Farm. On the other hand, if an amount was being held "in trust" and did not "belong" to the Colemans — *i.e.*, they had no property interest in that amount — then the United States' tax liens would not attach to those funds. *Iowa Fair Plan*, 257 N.W.2d at 629 ("Although a taxpayer's property may be born with a tax lien on it, it is necessary that the property right exist before the lien attaches to it."). In answering this question, the Court turns to state law. *Aquilino v. United States*, 363 U.S. 509, 513 (1960) ("state law controls in determining the nature of the legal interest which the taxpayer had in the property").

The question then becomes: if an insured settles a claim for injuries sustained in a motor vehicle accident, and his insurance policy provides that the person "shall hold in
11

trust" the settlement proceeds and reimburse medical expenses paid by the insurer, is the amount being held "in trust" property "belonging" to the insured? The parties have not cited any cases directly on point, and the Court has found none. I believe the issue may be analyzed, however, in terms of a constructive trust.

"A constructive trust is an equitable remedy courts apply to provide restitution and prevent unjust enrichment." *Berger v. Cas' Feed Store, Inc.*, 577 N.W.2d 631, 632 (Iowa 1998). While it may arise from actual or constructive fraud, it may also be based on equitable principles other than fraud. *Id.* "The party who seeks the imposition of a constructive trust must establish the right by clear, convincing, and satisfactory evidence." *Neimann v. Butterfield*, 551 N.W.2d 652, 654 (Iowa App. 1996).

Subrogation is an equitable doctrine that is intended to give relief to an entity "that pays a legal obligation that should have, in good conscience, been satisfied by another." *Allied Mut. Ins. Co. v. Heiken*, 675 N.W.2d 820, 824 (Iowa 2004). The doctrine plays a "vital role in insurance law" by permitting an insurer to recover against persons responsible for the insured's loss. The insurer's claim is against the tortfeasor, not the insured.

> These principles reveal that the insurer's claim for subrogation
> is against the tortfeasor responsible for the loss to the insured.
> The insurer has no right of subrogation against the insured.

*Allied Mutual*, 675 N.W.2d at 824. Thus, in the instant action, State Farm's claim was against the underlying tortfeasors, not against the Colemans. As spelled out in the policy, amounts paid by the underlying tortfeasors, representing medical bills paid by State Farm, were paid to the Colemans to "hold in trust" for State Farm.

While the Court has been unable to find any Iowa case involving the establishment of a trust under a car insurance policy, the Court finds the discussion in *Allison v. Wellmark, Inc.*, 2002 WL 31818946 (N.D. Iowa), to be instructive. There, the insured was injured in a motor vehicle accident and subsequently received payment pursuant to the

underinsured motorist provisions of his car insurance policy. The insured's medical insurance company, which had paid medical bills on the insured's behalf, sought reimbursement from the underinsurance proceeds pursuant to its subrogation right found in the medical insurance policy. The Court concluded that a constructive trust should be established in order to protect the medical insurer's subrogation rights. *Id.* at *9 ("The court concludes that equity requires the imposition of a constructive trust on the insurance proceeds at issue in this case."). *See also Ceres Environmental Services, Inc. v. Arch Specialty Ins. Co.*, 853 F. Supp. 2d 859, 867 (D. Minn. 2012) ("A constructive trust is an appropriate remedy when an insured recovers money from a third party and the insurer is subrogated to the insured's rights.") (applying New York state law).

Here, the clear language of the policy subrogated State Farm to the extent of its medical payments and, further, provided the Colemans "shall hold in trust" the settlement proceeds and reimburse State Farm to the extent of its payment. The releases signed by the Colemans make it clear that the settlement payment included medical expenses paid by State Farm. Under these circumstances, I believe that to the extent a portion of the settlement proceeds represented medical expenses paid by State Farm, the money was being held in trust for State Farm's benefit, was not the property of the Colemans, and was not subject to the tax liens previously perfected by the United States. Accordingly, I respectfully recommend that the Court order $69,095.69 of the settlement proceeds paid to State Farm.

### C. *Claim of Sharon A. Coleman*

Sharon Coleman asserts that she is an "innocent spouse" and is not obligated for the unpaid taxes. Sharon also asserts that 40-50% of the settlement proceeds are attributable to her consortium claim. That is, Sharon asks that the Court find that she is entitled to 40-50% of the amount being held by the Clerk of Court, free of any claim for unpaid taxes. The United States responds that this is not the proper forum to seek "innocent spouse"

relief, and even *if* Sharon was determined to be an innocent spouse, she still would have no claim to the interpleaded funds.

### 1. *Innocent Spouse*

Sharon claims that she is an "innocent spouse" under 26 U.S.C. § 6015(f).[16] In support of Sharon's claim, both Joe and Sharon aver that Joe was primarily responsible for household finances, including the preparation of tax returns. Prior to Joe's car accident, Sharon had never met with their banker or their accountant. Instead, Sharon simply signed the tax returns and other legal documents when requested by Joe. Sharon also offered evidence that she suffered from depression during the relevant time period, which was so severe at times that it caused her to spend days in bed. For purposes of these motions, the Court assumes the allegations are true. The United States argues, however, that the claims are immaterial because Sharon cannot seek innocent spouse relief in this court.

Innocent spouse relief is available "[u]nder procedures prescribed by the Secretary." 26 U.S.C. § 6015(f). Those procedures are found at 26 C.F.R. § 1.6015-1, *et seq.* Among other things, the requesting spouse must file Form 8857 — "Request for Innocent Spouse Relief" — or similar document. 26 C.F.R. § 1.6015-5(a). If the request for relief

---

[16] 26 U.S.C. § 6015(f) states:
Under procedures prescribed by the Secretary, if —

   (1) taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either); and

   (2) relief is not available to such individual under subsection (b) or (c),

the Secretary may relieve such individual of such liability.

14

is denied, then the requesting spouse may petition the Tax Court for a review. 26 C.F.R. § 1.6015-7(a).

In support of her argument that the Court should summarily determine that she is entitled to innocent spouse relief, Sharon cites a single case: *Yosinski v. Commissioner of Internal Revenue*, 2012 WL 2865808 (U.S. Tax Ct.). There, the requesting spouse filed a Form 8857, requesting relief under § 6015, and pursued an adverse ruling by the Commissioner to the Tax Court. The United States cites numerous cases for the proposition that, like *Yosinski*, an innocent spouse claim must be pursued before the Commissioner and appealed to the Tax Court.[17] For example, in *United States v. Elman*, 2012 WL 6055782 (N.D. Ill.), the United States filed suit against the defendant to collect unpaid federal taxes and to enforce tax liens. The defendant did not take issue with the computation of unpaid taxes, but asserted that she was not liable for the taxes under the innocent spouse provision of the Internal Revenue Code. The defendant filed a request for innocent spouse relief with the IRS, but it was denied. More than three years later, the government filed an action seeking recovery of the unpaid taxes. In response, the defendant filed an answer raising the innocent spouse provision of the Internal Revenue Code as an affirmative defense. The United States argued that the Court lacked jurisdiction to grant the defendant's request for relief under the innocent spouse provision of the tax code and, instead, the defendant was required to appeal the adverse decision by the Commissioner to the Tax Court. *Id.* at *3. In granting the United States summary judgment, the Court noted that "[a]lthough the statute itself does not address whether the tax court's jurisdiction is exclusive, courts interpreting the statute have concluded that it is." *Id.* The Court concluded that "exclusive jurisdiction over Ms. Elman's innocent spouse defense under § 6015(f) lies with the Tax Court." *Id.* at *4. In reply to the United

---

[17] *See* United States' Brief in Opposition to Defendant Sharon Coleman's Motion for Partial Summary Judgment (docket number 42) at 3.

States' long list of adverse authority, Sharon cites *Mudd v. Yarborough*, 786 F. Supp. 2d 1236 (E.D. Ky. 2011). That case, involving the disposition of insurance proceeds, describes interpleader actions generally. It provides no support, however, for an argument that the district court has jurisdiction to adjudicate an innocent spouse claim.

Accordingly, I believe this Court does not have jurisdiction to adjudicate Sharon's innocent spouse claim. If she intends to pursue that claim, she must file an appropriate application with the Internal Revenue Service, as required by 26 C.F.R. § 1.6015-5(a). Any adverse ruling by the Commissioner must then be taken to the Tax Court, pursuant to 26 C.F.R. § 1.6015-7.[18] Because Sharon is not entitled to innocent spouse relief in this interpleader action, she is jointly and severally liable for the unpaid taxes. 26 U.S.C. § 6013(d)(3) (taxpayers filing joint tax returns are jointly and severally liable for unpaid taxes). Even *if* some percentage of the settlement proceeds represents Sharon's consortium claim and constitutes her property, it is nonetheless subject to the United States' tax liens. 26 U.S.C. § 6321 (establishing a federal tax lien on all property belonging to a delinquent taxpayer). Therefore, I believe the United States is entitled to summary judgment, notwithstanding the fact that the settlement proceeds may include a recovery for Sharon's consortium claim.

### 2. *Joint and Several Property Interest*

The United States argues alternatively that even *if* a portion of the settlement proceeds represent Sharon's consortium claim, and even *if* Sharon is an "innocent spouse" and has no personal tax liability, the United States is nonetheless entitled to recover the full

---

[18] The federal regulations provide generally that an application for innocent spouse relief must be filed no later than two years from the date of the first collection activity against the requesting spouse. 26 C.F.R. § 1.6015-5(b). It is the Court's understanding, however, that the IRS is no longer enforcing the 2-year limitation period. *See* IRS Notice 2011-70. That is, Sharon is apparently not precluded from filing an appropriate claim with the IRS at this time.

16

Case 1:11-cv-00131-LRR   Document 59   Filed 03/14/13   Page 16 of 20

amount of its lien. The United States argues that Joe had a "joint and severable property interest" in the entire interpleaded funds and, because the tax liens attached to all of Joe's property interests, the liens attached to all of the settlement proceeds. Given my conclusions on Sharon's innocent spouse claim, I believe it is unnecessary for the district court to address this alternative argument.

### D. *Claim of Iowa Department of Revenue*

While the Iowa Department of Revenue has not filed a motion for summary judgment, it asserts in the resistance to Sharon's motion that $453,313.57 is due in state taxes, as of February 11, 2013. The State concedes in its brief, however, that the claims of the United States and State Farm have priority. Because those two claims exceed the amount available for distribution, the Department of Revenue is not entitled to any recovery in this action.

## V. SUMMARY

It is undisputed that the Colemans filed joint tax returns for the years 1997 through 2005. The unpaid federal income tax during those years, including accrued penalties and interest, totaled $1,468,498.22 as of January 7, 2013. Joe also owes unpaid FICA taxes totaling $69,096.99 and unpaid FUTA taxes totaling $945.27. The United States has made assessments for the unpaid taxes, establishing federal tax liens on the Colemans' property. The unpaid state income taxes during that period totaled $453,313.57 as of February 11, 2013, including penalties, interest, and statutory additions.

On November 22, 2005, Joe was seriously injured in a motor vehicle accident. An action was filed in the Iowa District Court for Polk County, seeking damages for Joe's personal injuries and Sharon's consortium claim. Prior to trial, the defendants paid $1,900,000 to settle the claims. After payment of attorneys fees and out of pocket expenses, the "net proceeds" of the settlement totaled $1,193,505.74. It is that amount,

plus accrued interest, which has been deposited with the Clerk of Court and is the subject of the interpleader action found in Count I of the complaint.

The unpaid taxes owed to the United States exceed the amount held by the Clerk of Court and, therefore, the United States is entitled to enforce its lien on the property, subject only to possible claims by the other defendants. As set forth above, I believe that $69,095.69 of the settlement proceeds were being held in trust for State Farm's benefit. Because a constructive trust was established, with the Colemans acting as mere trustees, that portion of the settlement did not belong to the Colemans, and the United States' tax liens did not attach to that amount. Accordingly, State Farm is entitled to payment in the amount of $69,095.69 from the interpleaded funds.

Sharon claims that a portion of the settlement proceeds are attributable to her consortium claim, that as an "innocent spouse" she has no tax liability, and that she is therefore entitled to payment for her consortium damages, free of the United States' tax liens. This Court has no jurisdiction to determine whether Sharon is an innocent spouse. Absent such a determination, she is liable for the unpaid taxes. Accordingly, even if some portion of the settlement proceeds are allocated to Sharon's consortium claim, they would nonetheless be subject to the United States' tax liens. Therefore, I do not believe that Sharon is entitled to any of the interpleaded funds.

As the Iowa Department of Revenue concedes, the claims of the United States and State Farm have priority to its claim. Since the interpleaded funds are insufficient to satisfy those two claims in full, the Iowa Department of Revenue is not entitled to receive any of the interpleaded funds.

In summary, I believe the Court should enter an order authorizing and directing the Clerk of Court to distribute $69,095.69 to State Farm Mutual Insurance Company, and to distribute the balance of the interpleaded funds to the United States of America.[19]

## VI. REPORT AND RECOMMENDATION

For the reasons set forth above, I respectfully recommend the Court enter an order finding that (1) the Plaintiffs properly invoked interpleader to establish appropriate disposition of the funds deposited with the Clerk of Court, (2) the Plaintiffs are discharged from further liability for the funds which are the subject of the interpleader, and (3) the Defendants cannot bring any further action affecting the disposition of the interpleaded funds.[20] In addition, the Clerk of Court should be authorized and directed to distribute $69,095.69 to State Farm Mutual Insurance Company, and to distribute the balance of the interpleaded funds to the United States of America.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court. *The parties are reminded that pursuant to Local Rule 72.1, "[a] party asserting such objections must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections." Accordingly, if the parties are going to object to this Report*

---

[19] In Count II of their complaint, the Plaintiffs seek a declaration regarding the respective rights to approximately $245,010.19 held in their trust account. That count is not the subject of the instant motions for summary judgment. If it is determined that the monies held in SPMB's trust account are payable to counsel as attorneys' fees, then the United States and the Iowa Department of Revenue make no claim on those funds. If, however, it is determined that some or all of the monies held by SPMB are payable to the Colemans, then the United States asks that its lien be enforced against that amount.

[20] This Order is not intended, however, to prevent Sharon Coleman from seeking a refund as an innocent spouse by pursuing an appropriate claim with the Internal Revenue Service.

19

and Recommendation, they must promptly order a transcript of the hearing held on March 13, 2013.

DATED this 14th day of March, 2013.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA

20

Case 1:11-cv-00131-LRR   Document 59   Filed 03/14/13   Page 20 of 20