**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

SIMMONS PERRINE MOYER
BERGMAN PLC and GORDON F.
JOHNSON,

        Plaintiffs,

vs.

CHARLES JOSEPH COLEMAN, JR.
et al.,

        Defendants.

No. 11-CV-131-LRR

**ORDER**

_____

*TABLE OF CONTENTS*

*I.*     **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*II.*    **RELEVANT FACTUAL AND PROCEDURAL HISTORY** . . . . . . . . . . . *2*
        *A.*    *Sharon Coleman's Motion for Partial Summary Judgment* . . . . . . . *3*
        *B.*    *State Farm's Motion for Summary Judgment* . . . . . . . . . . . . . . . *4*
        *C.*    *United States' Motion for Summary Judgment* . . . . . . . . . . . . . *4*
        *D.*    *Report and Recommendation* . . . . . . . . . . . . . . . . . . . . . . . . *4*

*III.*   **SUBJECT MATTER JURISDICTION** . . . . . . . . . . . . . . . . . . . . . *5*

*IV.*   **STANDARD OF REVIEW** . . . . . . . . . . . . . . . . . . . . . . . . . . . *6*

*V.*    **SUMMARY JUDGMENT STANDARD** . . . . . . . . . . . . . . . . . . . . . *6*

*VI.*   **ANALYSIS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *7*
        *A.*    *Colemans' Objection* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *8*
            *1.*    **Colemans' and the United States' arguments** . . . . . . . . . . *8*
            *2.*    **Applicable law** . . . . . . . . . . . . . . . . . . . . . . . . . . . *9*
            *3.*    **Discussion** . . . . . . . . . . . . . . . . . . . . . . . . . . . . *11*
        *B.*    *United States' Objection* . . . . . . . . . . . . . . . . . . . . . . . . . *14*
            *1.*    **United States' arguments** . . . . . . . . . . . . . . . . . . . *14*
            *2.*    **Applicable law** . . . . . . . . . . . . . . . . . . . . . . . . . *15*
            *3.*    **Discussion** . . . . . . . . . . . . . . . . . . . . . . . . . . . . *15*

    C.    *Iowa Department of Revenue's Objection* .................. 18
    D.    *Summary* ........................................ 18
VII.   **CONCLUSION** ........................................ 18

## I. INTRODUCTION

The matters before the court are Defendants Charles Joseph Coleman, Jr. ("Joe Coleman") and Sharon A. Coleman's ("Sharon Coleman") (collectively, "Colemans") Objection (docket no. 60), Defendant United States of America's Objection (docket no. 61) and Defendant Iowa Department of Revenue's Objection (docket no. 63) to United States Magistrate Judge Jon S. Scoles's Report and Recommendation (docket no. 59), which recommends that the court deny Sharon Coleman's "Motion for Partial Summary Judgment" (docket no. 35), grant Defendant State Farm Mutual Insurance Company's ("State Farm") "Motion for Summary Judgment" (docket no. 36) and grant in part and deny in part the United States' "Motion for Summary Judgment" (docket no. 37).

## II. RELEVANT FACTUAL AND PROCEDURAL HISTORY[1]

On November 22, 2005, Joe Coleman was in a motor vehicle accident. The Colemans retained Simmons Perrine Moyer Bergman PLC ("SPMB") and Gordon F. Johnson to initiate a lawsuit seeking recovery for Joe Coleman's injuries and Sharon Coleman's loss of consortium. The Colemans ultimately settled with the tortfeasors for $1,900,000.00. Of this amount, $633,333.33 was designated as attorneys' fees and $73,161.93 was designated as out-of-pocket expenses. Thus, after deducting attorneys' fees and out-of-pocket expenses, the net proceeds of the settlement totaled $1,193,505.74.

State Farm, the United States and the Iowa Department of Revenue each claim an entitlement to some or all of the net proceeds of the settlement. State Farm claims that it is entitled to $69,095.69, which represents reimbursement for medical costs State Farm paid pursuant to its insurance policy with Joe Coleman. The United States claims that it

---

[1] The court notes that none of the parties object to Judge Scoles's factual findings. Accordingly, the court adopts Judge Scoles's factual summary in its entirety and provides only a brief overview here.

is entitled to the total net proceeds of the settlement to satisfy unpaid federal taxes, which, as of January 7, 2013, totaled $1,538,540.48. Finally, the Iowa Department of Revenue claims that it is entitled to a portion of the settlement proceeds to satisfy unpaid state taxes, which, as of February 11, 2013, totaled $453,313.57. The Iowa Department of Revenue, however, acknowledges that State Farm and the United States' claims have priority.

On December 6, 2011, SPMB filed a two-count Complaint. Count I of the Complaint is for interpleader, in which SPMB asks the court to determine the respective rights of the Colemans, State Farm, the United States and the Iowa Department of Revenue to the net proceeds of the settlement and to discharge SPMB from further liability regarding those funds. On about February 21, 2012, SPMB deposited $1,243,377.87—the funds at issue in Count I—with the Clerk of Court. Count II of the Complaint, which is not at issue in the instant Order, seeks a declaratory judgment regarding SPMB's right to $233,333.33, which is a portion of the original $633,333.33 designated as attorneys' fees and which SPMB continues to hold in its trust account.

### A. *Sharon Coleman's Motion for Partial Summary Judgment*

On January 18, 2013, Sharon Coleman filed her Motion for Partial Summary Judgment alleging that forty to fifty percent of the settlement proceeds belong to her because such portion is traceable to her loss of consortium claim. Sharon Coleman further alleges that her portion of the settlement proceeds is not subject to the United States' and the Iowa Department of Revenue's tax liens because she was an "innocent spouse" during the relevant time period. Sharon Coleman's Motion for Partial Summary Judgment at 1-2. On February 11, 2013, the United States filed a Resistance (docket no. 42) to Sharon Coleman's Motion for Partial Summary Judgment. On that same date, the Iowa Department of Revenue filed a Resistance (docket no. 45) to Sharon Coleman's Motion for Partial Summary Judgment. On February 18, 2013, Sharon Coleman filed a Reply (docket no. 50) to the Iowa Department of Revenue's Resistance to Sharon Coleman's Motion for Partial Summary Judgment. That same date, Sharon Coleman filed a Reply (docket no.

51) to the United States' Resistance to Sharon Coleman's Motion for Partial Summary Judgment.

### B. *State Farm's Motion for Summary Judgment*

On January 18, 2013, State Farm filed its Motion for Summary Judgment seeking "the immediate release to State Farm of $69,095.69 of the total amount on deposit with the [c]ourt in satisfaction of [State Farm's] contractual subrogation interests." State Farm's Motion for Summary Judgment at 3. On February 11, 2013, the United States filed a Resistance (docket no. 43) to State Farm's Motion for Summary Judgment. On that same date, the Colemans filed a Response (docket no. 44) indicating that they do not resist State Farm's Motion for Summary Judgment. On February 18, 2013, State Farm filed a Reply (docket no. 49) to the United States' Resistance to State Farm's Motion for Summary Judgment.

### C. *United States' Motion for Summary Judgment*

On January 18, 2013, the United States filed its Motion for Summary Judgment, requesting that the court "grant summary judgment in favor of the United States, reduce the federal tax assessments to judgment and enter an order directing the distribution of the interpled funds currently being held by the Clerk of Court to the United States Treasury to apply to [Joe Coleman] and Sharon Coleman's unpaid federal tax liabilities." United States' Motion for Summary Judgment at 1. On February 6, 2013, State Farm filed a Resistance (docket no. 39) to the United States' Motion for Summary Judgment. On February 11, 2013, the Colemans filed a Resistance (docket no. 41) to the United States' Motion for Summary Judgment.

### D. *Report and Recommendation*

On March 6, 2013, the undersigned referred Sharon Coleman's Motion for Partial Summary Judgment, State Farm's Motion for Summary Judgment and the United States' Motion for Summary Judgment to Judge Scoles for a report and recommendation. *See* March 6, 2013 Order (docket no. 54). On March 13, 2013, Judge Scoles heard oral

arguments on the motions. *See* Minute Entry (docket no. 58). On March 14, 2013, Judge Scoles issued the Report and Recommendation.

On March 28, 2013, the Colemans, the United States and the Iowa Department of Revenue filed their objections to the Report and Recommendation. On April 4, 2013, the United States filed a Response (docket no. 67) to the Colemans' Objection.[2]

The court finds that the matter is fully submitted and ready for decision.

### III. SUBJECT MATTER JURISDICTION

The court has subject matter jurisdiction over Count I, the interpleader action, pursuant to 28 U.S.C. § 1335(a), which provides that a district court has original jurisdiction of any civil action of interpleader where: (1) the money or property at issue is valued at $500 or more; (2) two or more of the adverse claimants are of diverse citizenship; and (3) the plaintiff deposits the money or property into the registry of the court. 28 U.S.C. § 1335(a); *see also State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530 (1967) (discussing the minimal diversity requirement under 28 U.S.C. § 1335(a)). In this case, all three requirements are satisfied. SPMB had in its custody $1,243,377.87, which it deposited with the Clerk of Court. Minimal diversity exists because the Colemans are citizens of the State of Iowa and State Farm is a citizen of the State of Illinois. Accordingly, the court has subject matter jurisdiction over Count I pursuant to 28 U.S.C. § 1335(a). The court reserves ruling on whether it has subject matter jurisdiction over Count II, which is not at issue in the instant Order.

---

[2] On April 10, 2013, the Colemans filed a Reply (docket no. 69) to the United States' Response to the Colemans' Objection. Local Rule 72.1 provides that a party may file an objection to a report and recommendation within fourteen days after service of the report and recommendation and further provides that a party may respond to an objection within seven days after service of the objection. *See* LR 72.1. Neither Local Rule 72.1 nor Local Rule 7 permit a surreply. Accordingly, the court finds that the Colemans' Reply to the United States' Response to the Colemans' Objection is not permissible under the Local Rules and the court shall disregard it.

## IV. STANDARD OF REVIEW

The standard of review to be applied by the district court to a report and recommendation of a magistrate judge is established by statute:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3) (providing that, when a party properly objects to a report and recommendation on a dispositive motion, the district court must determine de novo the magistrate judge's recommendation). The Eighth Circuit Court of Appeals has repeatedly held that it is reversible error for the district court to fail to conduct a de novo review of a magistrate judge's report and recommendation when such review is required. *See, e.g.*, *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003); *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996); *Hosna v. Groose*, 80 F.3d 298, 306 (8th Cir. 1996); *Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995); *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994). The plain language of the statute governing review provides only for de novo review of "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). Therefore, the court reviews the unobjected-to portions of the proposed findings or recommendations for "plain error." *See Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (reviewing the magistrate judge's findings for "plain error" because the appellant did not file any objections).

## V. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects

the outcome of the case." *Amini v. City of Minneapolis*, 643 F.3d 1068, 1074 (8th Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 252 (1986)), *cert. denied*, 132 S. Ct. 1144 (2012). "[S]elf-serving allegations and denials are insufficient to create a genuine issue of material fact." *Anuforo v. Comm'r*, 614 F.3d 799, 807 (8th Cir. 2010). "To survive a motion for summary judgment, the nonmoving party must substantiate [its] allegations with sufficient probative evidence [that] would permit a finding in [its] favor based on more than mere speculation, conjecture, or fantasy." *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 801 (8th Cir. 2011) (second alteration in original) (quoting *Putman v. Unity Health Sys.*, 348 F.3d 732, 733-34 (8th Cir. 2003)) (internal quotation marks omitted). The court must view the record in the light most favorable to the nonmoving party and afford it all reasonable inferences. *See Schmidt v. Des Moines Pub. Sch.*, 655 F.3d 811, 819 (8th Cir. 2011).

## VI. ANALYSIS

As an initial matter, none of the parties object to Judge Scoles's recommendation that the court

> enter an order finding that (1) [SPMB] properly invoked interpleader to establish appropriate disposition of the funds deposited with the Clerk of Court, (2) [SPMB is] discharged from further liability for the funds which are the subject of the interpleader, and (3) the Defendants cannot bring any further action affecting the disposition of the interpleaded funds.

Report and Recommendation at 19. The court finds no plain error in Judge Scoles's recommendation. *See Griffini*, 31 F.3d at 692 (stating that a court reviews unobjected-to portions of a report and recommendation for plain error). Accordingly, the court finds that SPMB properly invoked interpleader, SPMB is discharged from further liability and the Colemans, State Farm, the United States and the Iowa Department of Revenue are prohibited from bringing any further action regarding the disposition of the interpled funds.

Having determined that the interpleader action is proper, the court shall turn to determine the proper distribution of the deposited funds. In the Report and Recommendation, Judge Scoles recommended that the court direct the Clerk of Court to "distribute $69,095.69 to State Farm . . . and to distribute the balance of the interpleaded funds to the United States." Report and Recommendation at 19. The Colemans object to the Report and Recommendation insofar as it finds that the United States is entitled to the balance of the interpled funds after satisfying State Farm's claim. The United States objects to the Report and Recommendation insofar as it finds that State Farm is entitled to $69,095.69. Finally, in the event that the court should find that the settlement proceeds are not depleted by State Farm and the United States' claims, the Iowa Department of Revenue objects to Judge Scoles's finding that the Iowa Department of Revenue is not entitled to any portion of the deposited funds. The court shall consider each objection in turn.

### A. Colemans' Objection

#### 1. Colemans' and the United States' arguments

In the Colemans' Objection, the Colemans contend that "there are clear factual issues regarding the amount of tax liability that the United States is entitled to, and therefore, summary judgment in favor of the United States is inappropriate." Colemans' Objection at 6. Specifically, the Colemans argue, for the first time, that the United States did not "levy or initiate court proceedings to collect the unpaid balances" for the tax years 1997, 1998, 1999, 2000 and 2001 within the ten-year statute of limitations provided for under 26 U.S.C. § 6502(a)(1). Colemans' Objection at 5. In connection with this argument, the Colemans request that the court consider new evidence not presented to Judge Scoles. Specifically, attached to the Colemans' Objection are: (1) a "Federal Tax Lien Search"; (2) a "Notice of Federal Tax Lien" dated March 12, 2003; and (3) a "Revocation of Certificate of Release of Federal Tax Lien" dated December 14, 2011. *See* Exhibits 1-3 (docket no. 60-1), Colemans' Objection. The Colemans argue that this

additional evidence shows that the United States did not properly initiate a collection action within the ten-year statute of limitations. While the Colemans acknowledge that the United States filed a Notice of Levy within the statute of limitations, the Colemans contend that the Notice of Levy was insufficient because the United States failed to file a notice of seizure. Accordingly, the Colemans argue that the United States' claims for the unpaid taxes for 1997 through 2001 are time-barred.

In the United States' Response to the Colemans' Objection, the United States argues that the court should deny the Colemans' request to consider additional evidence because the Colemans' Objection is "completely devoid of any supporting rationale for why the [c]ourt should now consider this supposed new evidence and the associated legal argument." United States' Response to Colemans' Objection at 2. The United States contends that it produced the Notice of Federal Tax Lien the Colemans contend is new evidence on October 17, 2012, and the "[t]he Colemans utterly fail to explain why they have neglected to raise until now an argument based on a document that was produced by the United States last year." *Id.* at 3. Moreover, the United States argues that, even if the court were to consider the new evidence, the Colemans' argument is without merit. Specifically, the United States contends that the Notice of Levy it filed with the Iowa District Court for Polk County on May 7, 2008, satisfied the statute of limitations. The United States argues that the Notice of Levy alone was sufficient because the property at issue is intangible and, consequently, a notice of seizure was unnecessary.

### 2. *Applicable law*

In *Markham v. Fay*, 74 F.3d 1347 (1st Cir. 1996), the First Circuit Court of Appeals summarized the relevant tax-collection statutory scheme:

> Once the [United States] makes an assessment of a taxpayer's liability, it has sixty days in which to "give notice to each person liable for the unpaid tax, stating the amount and demanding payment thereof." 26 U.S.C. § 6303(a). Once notice and demand are given and the tax goes unpaid, a lien in

9

favor of the United States automatically arises "upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321. . . . The lien arises at the time the assessment is made and continues until the liability is satisfied or becomes unenforceable by lapse of time. 26 U.S.C. § 6322.

*Id.* at 1353. Pursuant to 26 U.S.C. § 6502(a), the United States has ten years from the date of assessment to initiate collection of the unpaid taxes, either "by levy or by a proceeding in court." 26 U.S.C. § 6502(a).[3]

Thus, under 26 U.S.C. § 6502(a), the United States may satisfy the statute of limitations by initiating collection through a levy. In *G.M. Leasing Corp. v. United States*, 429 U.S. 338 (1977), the Supreme Court discussed the law applicable to levies and explained that "[b]oth real estate and personal property, tangible and intangible, are subject to levy." *Id.* at 350; *see also* Treas. Reg. § 301.6331-1 ("The district director may levy upon any property, or rights to property, whether real or personal, tangible or intangible, belonging to the taxpayer."). "Levy upon tangible property normally is effected by service of forms of levy or notice of levy and physical seizure of the property. Where that is not feasible, the property is posted or tagged." *G.M. Leasing Corp.*, 429 U.S. at 350. Levy upon intangible property, however, is effected simply by serving a notice of levy. *See id.* ("Because intangible property is not susceptible of physical seizure, posting, or tagging, levy upon it is effected by serving the appropriate form upon the party holding the property

---

[3] Title 26, United States Code, Section 6502 provides:

Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun . . . within 10 years after the assessment of the tax . . . .

26 U.S.C. § 6502(a).

10

or rights to property."); *United States v. Donahue Indus., Inc.*, 905 F.2d 1325, 1329-30 (9th Cir. 1990) ("In the case of intangible property, a levy is made for all purposes—including satisfaction of the statute of limitations set forth in 26 U.S.C. § 6502(a)(1)—by serving a notice of levy pursuant to [the applicable regulations]."); 35 Am. Jur. 2d *Federal Tax Enforcement* § 293 (2013) ("[S]ervice of a notice of levy is the only action the IRS is required to take in order to execute an effective levy, and service of the notice of levy in effect constitutes seizure of the property in question.").

### 3. *Discussion*

First, the court agrees with the United States that the Colemans waived their statute-of-limitations defense. Under Federal Rule of Civil Procedure 8(c)(1), the Colemans were required to "affirmatively state" their statute-of-limitations defense in their Answer (docket no. 18). Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including . . . statute of limitations . . . ."). Because the Colemans failed to include their statute-of-limitations defense in their Answer, the court finds that the Colemans waived it. *See Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008) ("'Generally, failure to plead an affirmative defense results in a waiver of that defense.'" (quoting *First Union Nat'l Bank v. Pictet Overseas Trust Corp.*, 477 F.3d 616, 622 (8th Cir. 2007))).

Furthermore, the court declines to ignore the Coleman's failure to comply with Rule 8(c)(1). The Colemans waited until they objected to the Report and Recommendation to raise this defense and they offer no explanation as to why this "new" evidence was previously unavailable. Thus, the court finds that the manner in which the Colemans raised the defense resulted in unfair surprise to the United States. *Cf. id.* ("[W]hen an affirmative defense is raised in the trial court in a manner that does not result in unfair surprise, technical failure to comply with Rule 8(c) is not fatal." (quoting *First Union Nat'l Bank*, 477 F.3d at 622)). Thus, because the Colemans did not properly raise their statute-of-limitations defense, the court shall overrule the Colemans' Objection.

Even if the court were to consider the Colemans' statute-of-limitations defense, the court would find that it fails on the merits. The Colemans do not dispute that the United States made proper and timely tax assessments for the 1997, 1998, 1999, 2000 and 2001 tax years; rather, the Colemans argue that the United States did not "collect[] by levy or by a proceeding in court" within ten years of the dates of assessment as required by 26 U.S.C. § 6502(a). In light of such argument, the court must first determine the dates of the relevant tax assessments. The United States made a tax assessment with respect to: the 1997 income tax period on March 29, 1999; the 1998 income tax period on March 20, 2000; the 1999 tax period on October 7, 2002; the 2000 income tax period on January 6, 2003; and the 2001 income tax period on February 3, 2003. *See* United States' Statement of Material Facts (docket no. 37-1) ¶ 5. Thus, applying the ten-year statute of limitations under 26 U.S.C. § 6502(a), the United States was required to "collect[] by levy or by a proceeding in court" the unpaid taxes by: March 29, 2009, for the 1997 income tax period; March 20, 2010, for the 1998 income tax period; October 7, 2012, for the 1999 income tax period; January 6, 2013, for the 2000 income tax period; and February 3, 2013, for the 2001 income tax period.

The issue, therefore, is whether the United States took appropriate collection action before those deadlines. The Colemans do not dispute that, on May 7, 2008, the United States filed a Notice of Levy in the Iowa District Court for Polk County. *See* Notice of Levy, United States' App'x (docket no. 37-3 to 37-5) at 10-15.[4] The Notice of Levy provides:

> The levy to which this NOTICE is attached attaches to all property of the taxpayer as provided by 26 U.S.C. § 6331, to

---

[4] The United States filed three Notices of Levy—one for unpaid income taxes, one for unpaid Federal Insurance Contributions Act taxes and one for Federal Unemployment Tax Act taxes. The Colemans' argument is limited to the United States' claims for unpaid income taxes for 1997, 1998, 1999, 2000 and 2001. Accordingly, only the Notice of Levy filed for unpaid income taxes is relevant to the court's discussion.

> include but not limited to . . . [a]ny property right, title or interest in any judgment or award which the taxpayer listed has received, or will receive, arising out of an automobile accident involving the taxpayer listed in Cerro Gordo County, Iowa on November 22, 2005, and any property right, title, or interest which the taxpayer listed has received, or will receive, arising out of a lawsuit . . . filed on or about July 6, 2007, in Polk County District Court, Des Moines, Iowa, at Docket #CL106033.

Notice of Levy, United States' App'x at 11. Under the rule in *G.M. Leasing Corp.*, a notice of levy is sufficient to establish a levy on intangible property. *See G.M. Leasing Corp.*, 429 U.S. at 350; *see also Donahue Indus., Inc.*, 905 F.2d at 1329-30 (discussing *G.M. Leasing Corp.*). Because a cause of action is intangible property,[5] the court finds that the Notice of Levy created an enforceable levy against any property right, title or interest that the Colemans would receive as a result of their lawsuit in the Iowa District Court for Polk County. Because the United States filed the Notice of Levy within ten years of the dates of assessment for the tax years 1997, 1998, 1999, 2000 and 2001, the United States' claims for unpaid taxes for those years are not time-barred.

The court is further persuaded by the United States District Court for the Northern District of New York's analysis in *CPS Electric, Ltd. v. United States*, 200 F. Supp. 2d 120 (N.D.N.Y. 2002). In *CPS Electric, Ltd.*, the United States served a notice of levy, which purported to effectuate a levy attaching to a delinquent taxpayer's tort claim. *Id.* at 125. The delinquent taxpayer ultimately settled the tort claim and the United States sought judgment in its favor entitling it to the proceeds of the settlement. *Id.* at 122. The delinquent taxpayer argued that the United States' claim was time-barred under 26 U.S.C. § 6502(a) because, although the United States had filed a notice of levy, it had not filed

---

[5] "Intangible property" is "property [that] has no intrinsic and marketable value, but is merely the representative or evidence of value." Black's Law Dictionary 728 (5th ed. 1979). The Iowa Supreme Court has held that a cause of action constitutes intangible property. *See Johnson v. Nelson*, 275 N.W.2d 427, 430 (Iowa 1979).

a notice of seizure.  *Id.* at 123.  The United States District Court for the Northern District of New York determined that the United States had initiated a collection action, thereby satisfying the ten-year statute of limitations under 26 U.S.C. § 6502(a), when it served the notice of levy because an interest in a tort claim is intangible property and, therefore, a notice of seizure was unnecessary.  *Id.* at 124.

In light of the foregoing, the court finds that the United States complied with the ten-year statute of limitations set forth in 26 U.S.C. § 6502(a).  Accordingly, the court shall overrule the Colemans' Objection.

### B. United States' Objection

#### 1. United States' arguments

In the United States' Objection, the United States objects to Judge Scoles's conclusion "that $69,095.69 of the interpled funds were held in 'constructive trust' by the Colemans" and, consequently, State Farm "is entitled to a distribution of that amount."  United States' Objection at 1.  The United States agrees with Judge Scoles "that state law determines the nature of the legal interest which the taxpayer has to the property."  *Id.* at 2.  The United States argues, however, that Judge Scoles erred in finding that a constructive trust existed for the benefit of State Farm.  The United States contends that, under Iowa law, a property interest includes an interest in a cause of action, which interest arises at the time the person has a right to institute the cause of action.  Thus, the United States maintains that, on November 22, 2005, the day that Joe Coleman was injured, he had a property interest in a cause of action against the tortfeasors.  Because the United States had perfected a tax lien prior to November 22, 2005, the United States argues that the tax lien attached to the Colemans' property interest in the cause of action on November 22, 2005.  Moreover, the United States contends that State Farm did not have a choate claim to the $69,095.69 until after "the United States' tax liens already had attached to the Colemans' property interest in the cause of action, which left nothing for State Farm's claim to attach to when it finally became choate."  *Id.* at 4.

14

## 2. Applicable law

The court previously discussed the relevant tax-collection statutory scheme. *See Markham*, 74 F.3d at 1353. At issue in the United States' Objection is 26 U.S.C. § 6321, which provides:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

26 U.S.C. § 6321. Thus, "[i]n any case involving a federal tax lien, the question to be determined is whether and to what extent the taxpayer had 'property or rights to property' to which the tax lien could attach." *St. Louis Union Trust Co. v. United States*, 617 F.2d 1293, 1300-01 (8th Cir. 1980) (citing *Aquilino v. United States*, 363 U.S. 509, 512 (1960)). "In applying § 6321, the taxpayer's 'rights to property' are determined under state law." *Thomson v. United States*, 66 F.3d 160, 161 (8th Cir. 1995); *see also Drye v. United States*, 528 U.S. 49, 58 (1999) ("We look initially to state law to determine what rights the taxpayer has in the property the Government seeks to reach, then to federal law to determine whether the taxpayer's state-delineated rights qualify as 'property' or 'rights to property' within the compass of the federal tax lien legislation.").

## 3. Discussion

It is undisputed that the United States had a properly perfected tax lien that attached to property belonging to the Colemans. Thus, the issue is whether the Colemans ever had a right to the portion of the settlement proceeds representing Joe Coleman's medical costs, such that the federal tax lien attached. After conducting a de novo review of the record, the court finds that Judge Scoles correctly concluded that the $69,095.69 never belonged to the Colemans and, consequently, the federal tax lien did not attach to that portion of the settlement proceeds.

The court looks to Iowa law to determine whether the Colemans ever had a right to the $69,095.69. *See Thomson*, 66 F.3d at 161. In *City of Ames v. Ratliff*, 471 N.W.2d 803, 806 (Iowa 1991), the Iowa Supreme Court held that, when an insurer pays medical costs on behalf of an insured and the insured's estate later sues a third-party tortfeasor for wrongful death, the insurer has a "proprietary interest" in the wrongful death settlement proceeds to the extent of the insurer's payment of medical costs. *Id.* at 806; *see also Allied Mut. Ins. Co. v. Heiken*, 675 N.W.2d 820, 824-25 (Iowa 2004) (generally discussing "subrogation," including an insurer's right to reimbursement, under Iowa law); *Ludwig v. Farm Bureau Mut. Ins. Co.*, 393 N.W.2d 143, 146-47 (Iowa 1986) (same).

In this case, pursuant to Joe Coleman's insurance policy, State Farm paid Joe Coleman's medical costs. When the Colemans settled their claims against the third-party tortfeasors, the settlement included claims for medical costs. *See* Release, State Farm's App'x (docket no. 36-3) at 64 (providing that the Colemans would "negotiate and pay from the proceeds of this settlement any and all medical bills . . . of . . . insurers"); Release, State Farm's App'x at 67 (providing that the Colemans were settling "all claims," including "medical expenses"). The court finds that, pursuant to *Ratliff*, State Farm has a proprietary interest in the portion of the settlement proceeds representing medical costs and, consequently, the Colemans never had a right to that portion of the settlement. Because the United States has "no greater right to property than the taxpayer himself," *Thomson*, 66 F.3d at 161, the United States' right to the settlement proceeds is subject to State Farm's right to reimbursement. *See Thomson*, 66 F.3d at 162 ("'The IRS acquires by its lien and levy no greater right to property than the taxpayer himself has at the time the tax lien arises.'" (quoting *St. Louis Union Trust Co.*, 617 F.2d at 1301)); *see also St. Louis Union Trust Co.*, 617 F.2d at 1301 ("If a taxpayer only has a right to property after

the satisfaction of prior claims, only the residue constitutes 'property' subject to lien and levy.").[6]

The court is further persuaded by the United States District Court for the Middle District of Florida's analysis in *Cole v. Barlar Enterprises, Inc.*, 35 F. Supp. 2d 891 (M.D. Fla. 1999). In *Cole*, Barlar Enterprises, Inc. ("Barlar"), a general contractor, sued Jeff and Joanne Davis, subcontractors. *Id.* at 892. The Davises had an insurance policy with American States, pursuant to which American States "provided counsel and related costs for the Davises' defense." *Id.* The Davises ultimately prevailed against Barlar and "the American States attorneys moved for (and were granted) attorneys' fees and costs." *Id.* Thereafter, the IRS demanded that Barlar release the attorneys' fees and costs to the United States to pay back taxes owed by Jeff Davis. *Id.* at 892-93. Barlar filed a complaint for interpleader, which was removed to federal court. *Id.* at 893. The United States District Court for the Middle District of Florida ultimately concluded that the Davises' insurance policy assigned the right to any recovered funds to American States and, thus, "under the insurance provision, the interpled money was always the property of American States." *Id.* at 895. "[A]s a result, the federal tax lien against the Davises did not attach." *Id.*

Thus, for the reasons set forth in the Report and Recommendation and discussed above, the court finds that $69,095.69 of the settlement proceeds never belonged to the Colemans and, accordingly, the United States' tax lien never attached to that portion of the settlement proceeds. The court shall therefore overrule the United States' Objection.

---

[6] The court further notes that the United States' argument poses a serious public policy concern. Such a situation would create an incentive for insurance companies to deny coverage to all delinquent taxpayers because, if the taxpayer is ever injured and the insurance company is required to pay for medical costs, the insurance company is virtually assured that it will not be reimbursed should the taxpayer ever recover from a third-party tortfeasor.

### C. *Iowa Department of Revenue's Objection*

In the Iowa Department of Revenue's Objection, the Iowa Department of Revenue states:

> To the extent it is finally determined that the United States is entitled to less than the full amount of its claims, or that the claims of the United States and of State Farm do not exceed the amount available for distribution, the Iowa Department of Revenue respectfully objects to the finding and recommendation of Judge [Scoles] that it is not entitled to any recovery from the interpleaded funds.

Iowa Department of Revenue's Objection at 2. Because the court finds that Judge Scoles correctly determined the distribution of the interpled funds, the court shall overrule the Iowa Department of Revenue's Objection.

### D. *Summary*

Having conducted a de novo review of the objected-to portions of the Report and Recommendation, the court finds that it is appropriate to overrule the Colemans' Objection, the United States' Objection and the Iowa Department of Revenue's Objection. Moreover, the court has reviewed those portions of the Report and Recommendation to which no party objected and the court finds no plain error in Judge Scoles's findings and conclusions. Accordingly, the court shall adopt the Report and Recommendation in its entirety.

## VII. CONCLUSION

In light of the foregoing, the court **ORDERS**:

(1) The Report and Recommendation (docket no. 59) is **ADOPTED** and the parties' objections are **OVERRULED**.

(2) Plaintiff Simmons Perrine Moyer Bergman PLC properly invoked interpleader to establish appropriate disposition of the funds deposited with the Clerk of Court. Plaintiff Simmons Perrine Moyer Bergman PLC is discharged from further liability for the funds which are the subject of the

interpleader. Defendants Charles Joseph Coleman, Jr., Sharon A. Coleman, State Farm Mutual Insurance Company, United States of America and Iowa Department of Revenue are prohibited from bringing any further action affecting the disposition of the interpled funds.

(3) Defendant Sharon A. Coleman's "Motion for Partial Summary Judgment" (docket no. 35) is **DENIED**, Defendant State Farm Mutual Insurance Company's "Motion for Summary Judgment" (docket no. 36) is **GRANTED** and Defendant United States of America's "Motion for Summary Judgment" (docket no. 37) is **GRANTED IN PART** and **DENIED IN PART**.

(4) After resolution of the remaining count, the Clerk of Court is **DIRECTED** to enter judgment on Count I of the Complaint in favor of Defendants State Farm Mutual Insurance Company and United States of America.

(5) After judgment enters, the Clerk of Court is **DIRECTED** to pay the sum of $69,095.69, which is currently held in the court's registry, to Defendant State Farm Mutual Insurance Company and the remaining balance to Defendant United States of America.

**DATED** this 15th day of April, 2013.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA